**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1087-WJM-KLM

ERNESTO REYES,
KRISTINA RYAN,
EDUARDO VALE, individually and as parent and conservator of NAYELI VALE,
ISABELLE VALE, individually and as parent and conservator of NAYELI VALE, and
SHEREE PEREZ, individually and as representative plaintiffs for a similarly situated
class of persons,

      Plaintiffs,

v.

JOHN HICKENLOOPER, Governor of the State of Colorado, in his official capacity,
SUSAN E. BIRCH, Executive Director of the Colorado Department of Health Care
Policy and Financing, in her official capacity,
DAVID SMITH, individually and in his official capacity as Manager of the Benefits
Coordination Section of the Colorado Department of Health Care Policy and Financing,
LEANNE GARDNER, individually and in her official capacity as Trust Officer of the
Benefits Coordination Section of the Colorado Department of Health Care Policy and
Financing, and
ERIC STRICCA individually and in his official capacity as Long Term Care Medicaid
Eligibility Policy Specialist of the Colorado Department of Health Care Policy and
Financing,

      Defendants.

---

**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE
IN PART AND WITH PREJUDICE IN PART**

---

Plaintiffs Ernesto Reyes ("Reyes"), Kristina Ryan ("Ryan"), Nayeli Vale ("Vale"),[1]

and Sheree Perez ("Perez") (collectively, "Plaintiffs") have sued the Governor of

Colorado in his official capacity; Susan Birch, executive director of the Colorado

---

[1] Vale is a minor.  The complaint and this Court's CM/ECF docket information both list
Vale by her full name.  The parties' later filings refer to her by her initials, N.V., but no party has
moved to seal or strike her full name.

Department of Health Care Policy and Financing ("Department"), in her official capacity; and certain of the Department's employees—David Smith ("Smith"), Leanne Gardner ("Gardner"), and Eric Stricca ("Stricca")—in both their individual and official capacities. All five defendants will be referred to collectively as "Defendants."  Smith, Gardner, and Stricca will be referred to collectively as the "Individual Defendants."

Plaintiffs claim that the Department (as managed by Defendants) has failed to provide a procedure by which Plaintiffs and those similarly situated may contest Medicaid liens that the Department asserts against money they have received through lawsuit settlements or insurance proceeds.  (ECF No. 1.)  Before the Court is Defendants' Motion to Dismiss Class Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 14.)  For the reasons set forth below, the Court grants the motion without prejudice in part and with prejudice in part.

## I.  LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of

2

pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

In this case, Plaintiffs have attached various documents to their complaint and other filings. Specifically, they have attached to their complaint certain court filings from other cases, and certain correspondence. (*See* ECF Nos. 1-2 to 1-11.) They have attached another court filing to their response in opposition to Defendants' motion to dismiss. (*See* ECF No. 21-2.) The Court may consider these documents without converting the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (district court properly took judicial notice of state court records relating to the federal action); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (district court may take judicial notice of "facts which are a matter of public record" without converting a 12(b)(6) motion into a summary judgment motion).

## II.  LEGAL FRAMEWORK

This case arises out of the many statutes, regulations, and judicial decisions governing Medicaid. Understanding that legal framework is necessary to understand Plaintiffs' asserted facts and legal theories.

A.    **Federal Medicaid Law**

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*., establishes the Medicaid program generally.  Medicaid is a federal-state partnership: the federal government pays at least 50% of the costs for patient care "and, in return, [each] State pays its portion of the costs and complies with certain statutory requirements." *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006).  One of those requirements is that the state must investigate and pursue reimbursement when it pays Medicaid benefits flowing from injuries to beneficiaries caused by third parties. 42 U.S.C. § 1396a(a)(25)(A)–(B).  Moreover, each state must enact a law by "which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any [third] party for such health care items or services." *Id*. § 1396a(a)(25)(H).  The state must also require Medicaid beneficiaries "to assign the State any rights . . . to payment [received] for medical care from any third party." *Id*. § 1396k(a)(1)(A).  A state's claim for reimbursement from money received by the beneficiary from a third party is commonly known as a "Medicaid lien." *See, e.g.*, *I.P. ex rel. Cardenas v. Henneberry*, 795 F. Supp. 2d 1189, 1195–96 (D. Colo. 2011).

Medicaid liens have prompted some thorny questions.  For example, consider a Medicaid beneficiary who brings a lawsuit against a tortfeasor for various types of damages (medical expenses, pain and suffering, lost wages, etc.) and settles the lawsuit for $100,000.  The beneficiary and the tortfeasor agree (or a court orders) that

4

$30,000 of that amount is attributable to medical expenses. The state, however, incurred $50,000 in Medicaid expenses on the beneficiary's behalf. May the state recover its entire $50,000, or is it limited to $30,000, or something else? And what if the beneficiary settles for a lump sum, with no allocation of specific dollars to specific types of damages?

Recent Supreme Court decisions have resolved these questions to some extent. In *Ahlborn*, *supra*, the state asserted a Medicaid lien of more than $215,000 on a $550,000 settlement, but stipulated that only about $35,000 of that settlement "constituted reimbursement for medical payments made." 547 U.S. at 274. The Supreme Court held that the state could not claim any amount above that $35,000 because the relevant federal statutes provide "no more than the right to recover that portion of a settlement that represents payments for medical care." *Id*. at 282.

A few years after *Ahlborn*, the Supreme Court addressed the lump-sum settlement situation, where the amount of the settlement attributable to medical expenses is unresolved. In *Wos v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391 (2013), the Court invalidated North Carolina's statutory presumption that one-third of all such recoveries represent medical expenses. *See id*. at 1398–99. Such a presumption, the Court held, could allow the state to recover more than the amount fairly attributable to medical expenses, which would violate *Ahlborn*'s directive that the state can recover only from amounts attributable to medical expenses and nothing else. *See id*. The Court further held that "a judicial or administrative proceeding would be necessary" to determine the amount of the settlement attributable to medical expenses. *Id*. at 1399.

Later in its opinion, however, the Court partly backed off the requirement for case-by-case determinations: "[I]f States are concerned that case-by-case judicial allocations will prove unwieldy, they may . . . be able to adopt *ex ante* administrative criteria for allocating medical and nonmedical expenses, provided that these criteria are backed by evidence suggesting that they are likely to yield reasonable results in the mine run of cases." *Id*. at 1402.

## B.    Colorado Medicaid Law

The Department administers Colorado's Medicaid program pursuant to various statutes and regulations. *See, e.g.*, Colo. Rev. Stat. § 25.5-4-101 *et seq*.; 10 Colo. Code Regs. § 2505-10. Of particular relevance here is Colorado Revised Statute § 25.5-4-301(5)(a), which gives the Department a lien on judgments and settlements obtained by beneficiaries from third parties:

> When the state department has furnished [Medicaid benefits] . . . for which a third party is liable, the state department shall have an automatic statutory lien for all such medical assistance. The state department's lien shall be against any judgment, award, or settlement in a suit or claim against such third party and shall be in an amount that shall be the fullest extent allowed by federal law as applicable in this state, but not to exceed the amount of the medical assistance provided.

Four years ago, a Medicaid beneficiary asked this Court to declare the foregoing statute invalid in light of *Ahlborn* because the statute could theoretically allow the Department to recover more than the amount allocated to medical expenses. *See Henneberry*, 795 F. Supp. 2d at 1193–94. This Court rejected that argument, finding that the phrase "in an amount that shall be the fullest extent allowed by federal law"

automatically required the Department to comply with *Ahlborn*'s directive that Medicaid liens may attach only to amounts designated as compensation for medical expenses. *Id*. at 1194–96.

With this background on the relevant statutes and case law, the Court now turns to the facts alleged in this case.

### III.  FACTUAL BACKGROUND

As alleged in the complaint, all Plaintiffs share a common situation:

- each was injured by the alleged negligence of a third party (ECF No. 1 ¶¶ 13, 23, 28, 52);

- each received Medicaid benefits from the Department to pay for medical care flowing from his or her injury (*id*. ¶¶ 12, 22, 29, 55);

- each obtained a lump-sum payout for his or her injuries, either through settling a lawsuit or through insurance proceeds (*id*. ¶¶ 13, 24, 31, 53); and

- each faces a Medicaid lien asserted by the Department on the payout, and each claims that the Department's lien is unenforceable until some process determines the amount of the payout attributable to medical expenses (*id*. ¶¶ 14, 24, 32, 55).

Notably, however, no Plaintiff asks this Court to resolve his or her particular lien dispute.  Relevant facts unique to the various Plaintiffs are as follows.

### A.     Ernesto Reyes

Reyes suffered an injury during a medical procedure in June 2010.  (ECF No. 1-

2 ¶¶ 3–4.)  As of August 2013, the Department had paid Medicaid benefits of nearly $159,000 on Reyes's behalf.  (ECF No. 1-2 ¶¶ 3–4.)

Reyes brought a medical malpractice lawsuit in Pueblo district court and eventually settled for $750,000.  (ECF No. 1 ¶ 13.)  The Department asserted a Medicaid lien on the settlement.  (*Id*. ¶ 14.)  Reyes then petitioned the Pueblo court, sitting in probate, to set up a disability trust for him and escrow the Medicaid lien "until [it] was formally determined."  (*Id*. ¶ 15.)  A disability trust is a statutorily authorized trust that permits a disabled individual to maintain Medicaid eligibility even though the individual might possess a large sum of money intended to pay for expenses related to his or her disability.  *See* Colo. Rev. Stat. § 15-14-412.8(1).  However, Colorado law states that "[n]o disability trust shall be valid unless the [Department] has reviewed the trust and determined that the trust conforms to . . . any rules adopted by the medical services board [the Department's rulemaking body] pursuant to section 25.5-6-103, C.R.S."  *Id*. § 15-14-412.8(4).  Among those rules is that "[a]ny [Medicaid lien] must be satisfied prior to funding of the trust and approval of the trust."  10 Colo. Code Regs. § 2505-10:8.100.7.E(6)(b)(i)(f).  The Department therefore objected to the disability trust.  (*See generally* ECF No. 1-2.)  In response, Reyes petitioned for a settlement trust pending resolution of the Medicaid lien, which the Department allegedly also opposed.  (ECF No. 1 ¶ 16; *see also* ECF Nos. 1-3 and 1-4.)[2]

Eventually, Reyes successfully obtained a disability trust.  (ECF No. 1 ¶ 20.)  It is not clear whether this happened over the Department's objection, but in any event,

---

[2] The exhibit Reyes cites regarding the Department's opposition to the settlement trust only discusses disability trusts, not settlement trusts.  (*See generally* ECF No. 1-4.)

Reyes alleges that the Department has never "offered [him] any process or procedure to determine the amount of the Medicaid lien . . . ." (ECF No. 1 ¶ 18.) Through this alleged failure, Reyes says that the Department has "intentionally allowed the Medicaid lien to accumulate and grow in size. By delaying resolution of the lien in a prompt and efficient manner, Mr. Reyes' ability to take care of himself with the remaining funds is in great jeopardy." (*Id*. ¶ 19.) Mr. Reyes intends to move to deposit the disputed amount into this Court's registry pending determination of the Department's lien rights (*id*. ¶ 21), although he does not seek declaratory judgment as to his specific rights (*see id*. ¶¶ 63–91).

## B.   Kristina Ryan

In September 2012, Ryan was injured in an auto accident caused by an uninsured motorist. (*Id*. ¶ 23.) Ryan's insurance carrier paid Ryan $100,000 in uninsured motorist (UIM) benefits. (*Id*. ¶ 24.) The Department asserts a lien over one-third of that payout. (*Id*.) Ryan believes that her insurance carrier is not a "third party [that] has a legal liability to make payment for such assistance," 42 U.S.C. § 1396a(a)(25)(H), and therefore argues that the Department may not assert a Medicaid lien against the UIM payout. (*Id*. ¶ 25.) In this action, however, Ryan does not ask for a resolution of that specific dispute, but instead claims injury because "no procedures exist in Colorado for determination of a Medicaid lien where there is a dispute over the amount of the lien or the very existence of a lien." (*Id*. ¶ 27.)

## C.   Sheree Perez

Perez was injured while skiing in April 2009. (*Id*. ¶ 28.) She settled with the ski

resort for $1 million, leaving her with roughly $442,000 after paying attorneys' fees and costs. (ECF No. 1-7 ¶ 3.) She deposited most of that money (about $408,000) into a disability trust (*id*. ¶ 4), apparently without the Department's approval (ECF No. 21-2 ¶¶ 2–6). The Department claims a Medicaid lien of almost $143,000. (ECF No. 1 ¶ 32.)

1.    Perez's State Court Proceedings

Perez filed a case in Denver district court, and another in probate court, both seeking a determination of the lien amount the Department may properly claim. (*Id*. ¶¶ 33–34.) Perez does not state, nor does the record otherwise reveal, the outcome of those lawsuits, but the Department opposed both. (*See id*.; *see also* ECF No. 1-6.)

In late 2013, the Department itself sued Perez in Denver district court to enforce its Medicaid lien. (ECF No. 1 ¶ 25.) At an evidentiary hearing in that proceeding, the parties argued extensively about the proper method for calculating the lien. (*See generally* ECF No. 1-7.) Perez proposed what she called a "proportional allocation model." (*Id*. ¶ 8.) This model basically discounts the Department's lien in proportion to the amount that the beneficiary supposedly discounted his or her case to achieve a settlement. Perez based this proposal on language from *Wos* stating that "[t]rial judges and trial lawyers . . . can find objective benchmarks to make projections of the damages the plaintiff likely could have proved had the case gone to trial." *Wos*, 133 S. Ct. at 1400. (*See also* ECF No. 1-7 ¶ 7.)

Applying this model to Perez's case, the parties reviewed pleadings and expert reports from the case against the ski resort and stipulated that the gross value of

10

winning at trial would have been $4.9 million.  (*Id.*)  Of that, the Department would have

had a claim for, at most, $142,779 (the actual amount it paid on Perez's behalf).

Dividing $142,779 by $4.9 million yielded a ratio of 2.9%.  (*Id.* ¶ 8.)  Perez then asked

the court to apply that ratio to the net settlement ($442,213), yielding a lien amount of

$12,824 (*i.e.*, $442,213 × 0.029).  (*Id.*)

The Denver court mostly agreed with the proportional allocation model, except

that it applied the 2.9% ratio to the gross settlement ($1 million) rather than the net.  (*Id.*

¶ 10.)  After adjusting for a share of Perez's attorneys' fees incurred against the ski

resort (required by Colorado Revised Statute § 25.5-4-301(5)(d)), the Denver court

calculated the Department's lien at $25,375.  (*Id.* ¶ 16.)  That ruling is currently on

appeal to the Colorado Court of Appeals.  (*See* ECF Nos. 1-8, 1-9, and 1-10.)

2.    Perez's Loss of Benefits

Perez alleges that, in the midst of the foregoing proceedings, "Defendants

Gardner, Stricca and Smith [*i.e.*, the Individual Defendants] . . . intentionally and/or

recklessly removed Ms. Perez from the Medicaid program with knowledge she was

attempting to lawfully determine the lien in express violation of federal law."  (ECF No. 1

¶ 37.)[3]  Perez reapplied for Medicaid but was denied because she was not sufficiently

impoverished.  In particular, the Department refused to exclude the funds in her

disability trust because she had not first paid her Medicaid lien, as required by 10

Colorado Code of Regulations § 2505-10:8.100.7.E(6)(b)(i)(f) ("[a]ny [Medicaid lien]

---

[3] In other court proceedings, the Department asserted that Perez's Medicaid benefits
were terminated because she failed to provide required asset-verification information.  (ECF
No. 1-6 ¶ 10.)

must be satisfied prior to funding of the trust and approval of the trust").  (ECF No. 21-2 ¶¶ 6, 11.)  A Colorado administrative law judge upheld the Department's reasoning and denial of benefits.  (*Id*. at 3–4.)

Perez makes several allegations against Gardner, Stricca, and Smith based on this sequence of events.  Gardner allegedly "is the person who determined that Ms. Perez . . . did not have [a] valid trust[] because [she] had [not] yet paid the Medicaid lien . . . despite [Gardner's] knowledge that [Perez was] attempting to get the lien determined by a court."  (ECF No. 1 ¶ 10.)  Stricca allegedly "made the decision that Ms. Perez was no longer eligible for . . . Medicaid because Ms. Gardner had not approved the trust."  (*Id*. ¶ 11.)  And Smith allegedly "disapproved the trust for Ms. Perez and directed her trust to be disapproved in concert with Ms. Gardner and approved her denial of Medicaid benefits in concert with Mr. Stricca."  (*Id*. ¶ 9.)

All of these allegations relate to Perez's application to reinstate her Medicaid benefits.  In essence, Perez claims that the Individual Defendants are unlawfully blocking her right to return to the Medicaid rolls.  Perez does not claim that the Individual Defendants removed Perez from the Medicaid rolls in retaliation for Perez's choice to contest the lien.  As to that event, Perez only alleges that these Defendants acted with knowledge that Perez was then contesting the lien.  (*Id*. ¶¶ 37, 93.)

**D.    Nayeli Vale**

Vale, born in June 2009, has suffered disabling medical conditions since birth. (*Id*. ¶¶ 49–51.)  A lawsuit against the doctors who provided neonatal care yielded a confidential settlement.  (*Id*. ¶¶ 52–53.)  The Department asserts a Medicaid lien of

more than $282,000 against that settlement.  (*Id*. ¶ 55.)  The Department approved a

disability trust for Vale on condition that her personal injury attorneys hold back about

$310,000 from the settlement.  (*Id*. ¶ 56.)  The complaint does not say whether this

holdback is akin to some sort of escrow pending resolution of the lien.  Regardless,

Vale, "through her parents, next friends and conservators, dispute the amount of the

lien and claim the calculation of the lien does not comply with federal law."  (*Id*. ¶ 57.)

Vale alleges that the Department has "no due process procedures in place to allow for

notice as to how this lien was calculated or to grant Ms. Vale an opportunity to dispute

the amount of the lien," and "[w]ithout such procedures in place, [the Department]

intend[s] to increase the lien due solely to the failure to implement any required to

process procedures for lien determination."  (*Id*. ¶¶ 58–59.)

E.     **Class Action Allegations**

Plaintiffs intend to bring this action on behalf of themselves and a class

comprising individuals "who have received or will receive an unallocated settlement,

judgment or award since April 15, 2012," and from whom the Department has

demanded payment on a Medicaid lien, or who actually paid the Department's lien,

without notice of a right to dispute the lien and without a hearing.  (*Id*. ¶ 60.)  The

propriety of class certification, however, is not before the Court at this time.

## IV.  ANALYSIS

Although Plaintiffs have asserted four specific claims for relief, the first three are

interconnected.  At bottom, these three claims for relief seek a declaration that

Colorado must establish some sort of administrative or judicial process by which

13

Plaintiffs and similarly situated individuals can challenge the Department's Medicaid

liens.  (ECF No. 1 ¶¶ 71, 76, 82–83.)  This theory is most clearly displayed in Plaintiffs'

first and third claims for relief.  The Court will therefore begin its analysis by addressing

the first and third claims, followed by the second claim (which is effectively a subset of

the first and third).  The Court will then address the fourth claim for relief, which makes

allegations specific to Perez's inability to regain her Medicaid benefits.

**A.     Plaintiffs' Claim that Colorado Must Supply a Procedure to Challenge Medicaid Liens (Claims One and Three)**

Plaintiffs' first claim for relief is titled "Violation of Anti-Lien Provisions of Federal

Medicaid Act."  Plaintiffs' third claim for relief is titled "Violation of Due Process."  The

idea driving both claims is that federal law, as interpreted by *Ahlborn* and *Wos,* requires

some sort of procedure to resolve Medicaid lien disputes over any "unallocated

settlement, judgment or award since April 15, 2012."  (ECF No. 1 ¶¶ 60, 75, 88; *see

also* ECF No. 21 at 5–6.)

The Court agrees that *Ahlborn* and *Wos* call for some process by which Medicaid

lien disputes may be resolved if the state and the beneficiary cannot agree on the

amount of a settlement or other recovery that is attributable to medical expenses.  In

such a situation, *Ahlborn* directed the parties to "submit[] the matter to a court for

decision."  *Ahlborn*, 547 U.S. at 288; *see also Wos*, 133 S. Ct. at 1399 ("When the

State and the beneficiary are unable to agree on an allocation, *Ahlborn* noted, the

parties could 'submi[t] the matter to a court for decision.'").  *Wos* held out the idea that

administrative procedures might also suffice.  *Id*. at 1399, 1402.

Nonetheless, Plaintiffs do not explain why the procedure employed in *Ahlborn* and *Wos*—a declaratory judgment action—is not enough to satisfy their needs, or the state's obligation. *See Wos*, 133 S. Ct. at 1396 (noting that case began as a declaratory judgment action regarding the scope of the Medicaid lien); *Ahlborn*, 547 U.S. at 274 (same). The *Henneberry* case, discussed *supra*, was also a declaratory judgment action to determine the extent of a Medicaid lien (and was filed by the same counsel representing Plaintiffs here). *See Henneberry*, 795 F. Supp. 2d at 1190–91. Federal and state courts throughout the country have entertained similar declaratory judgment actions. *See, e.g.*, *Andree ex rel. Andree v. Cnty. of Nassau*, 311 F. Supp. 2d 325 (E.D.N.Y. 2004); *Norwest Bank N.D., N.A. v. Doth*, 969 F. Supp. 532 (D. Minn. 1997); *Wilhoite v. Mo. Dep't of Soc. Servs. ex rel. Levy*, 2012 WL 3723304 (W.D. Mo. Aug. 27, 2012); *Doe v. Vt. Office of Health Access*, 54 A.3d 474 (Vt. 2012); *Padgett v. Toal*, 581 S.E.2d 744 (Ga. Ct. App. 2003); *Seeman v. Iowa Dep't of Human Servs.*, 604 N.W.2d 53 (Iowa 1999).

Declaratory judgment is a well-established procedure in Colorado courts. *See* Colo. Rev. Stat. §§ 13-51-101 to -115; Colo. R. Civ. P. 57. Other avenues also exist to challenge Medicaid liens. When the Department sued Perez to enforce its lien, the Denver district court fully heard and ruled on her challenge to the lien and reduced it substantially. *See* Section III.C.1, *supra*.[4]

---

[4] An unpublished disposition from this Court concludes that certain lien disputes might even support a 42 U.S.C § 1983 claim. *See Perez ex rel. Cardenas v. Henneberry*, 2010 WL 1463146, at *3–4 (D. Colo. Apr. 12, 2010).

15

In short, Colorado's courts are open and capable of resolving these sorts of disputes.  (*See, e.g.*, ECF No. 25 at 3 (the Department "agrees that district courts are an appropriate venue for such determinations").)  Plaintiffs wish for some other procedure, such as an administrative process (*see* ECF No. 21 at 6), but that is a unique wish.  In the Court's experience, most parties are eager to avoid administrative tribunals and proceed directly to court because they perceive courts as providing maximum process and impartiality.  In any event, Plaintiffs have offered no authority requiring the Department to establish an administrative process in the alternative to Colorado's declaratory judgment procedure.[5]

Plaintiffs assert that proceedings "in state district court [are] only available to the Department."  (ECF No. 21 at 11.)  In support, Plaintiffs cite Colorado Revised Statute § 25.5-4-301(6), which permits the Department to file an action against a beneficiary who does not notify the Department of a lawsuit filed against a third-party tortfeasor. But the fact that this statute permits the Department to sue in certain circumstances (which do not seem to apply here anyway) does not mean that beneficiaries are precluded from suing the Department.  Plaintiffs' argument is a simple *non sequitur*.

---

[5] Plaintiffs assert that the Department has a duty under Colorado law to establish rules for resolving disputes between the Department and those who receive assistance from it.  (ECF No. 21 at 10 (erroneously citing Colo. Rev. Stat. § 25.5-4-303(3)(e), which does not exist; likely intending to cite Colo. Rev. Stat. § 25.5-1-303(3)(e)).)  But Plaintiffs do not claim that no such rules exist, and in any event, their brief emphasizes that they are not bringing claims for violation of state law.  (*Id*. at 20.)  Such a claim, of course, would raise serious Eleventh Amendment concerns because Plaintiffs would be requesting this Court to order the Department to comply with state law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Accordingly, to the extent Plaintiffs claim that no process exists in Colorado by which they may resolve Medicaid lien disputes, they fail to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs' first and third claims for relief are therefore dismissed. This dismissal is without prejudice to amendment, however, if Plaintiffs can explain why declaratory judgment provides inadequate process for Medicaid lien disputes, including the sorts of disputes raised in Plaintiffs' complaint (*e.g.*, the Department's refusal to approve disability trusts, or the Department's claim for reimbursement from UIM benefits). Such amendment would also need to state why these claims are not moot as to Perez given that she is already litigating her lien dispute in Colorado state court.

## B.   Perez's Proportional Allocation Model (Claim Two)

Plaintiffs' second claim for relief is titled "violation of federal and state assignment rights pursuant to 42 U.S.C. § 1396a(a)(25)(H), 42 U.S.C. § 1396k(a)(1), and C.R.S. § 25.5-4-205(4)(a)." (ECF No. 1 at 9.) The aim, however, is a declaration that Perez's proportional allocation model, adopted in Denver district court, is the right way to resolve Medicaid disputes. (ECF No. 1 ¶¶ 75–79; *see also id*. ¶ 47 (arguing that the proportional allocation model "needs to be implemented state wide").)

Plaintiffs lack standing to make this request. The Department has not challenged standing, but "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078–79 (10th Cir. 2009) (internal quotation marks omitted). "To establish Article III standing, the plaintiff bears the burden of demonstrating the following three

17

elements: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).  With respect to the third element, and to declaratory judgment actions in particular, a plaintiff must seek "specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts."  *Id*. at 1026 (internal quotation marks omitted).

This is where Plaintiffs' case falters.  Plaintiffs do *not* ask this Court to resolve their specific Medicaid lien disputes.  They instead ask this Court to declare that Perez's proportional model is the proper procedure in some other proceeding that Reyes, Ryan, Vale, and other putative class members might bring against the Department.  But Plaintiffs have not brought any proceeding against the Department, nor do their actions to this point establish that they will ever do so.  For unexplained reasons, they have instead been waiting for the Department to establish a different procedure than the declaratory judgment proceeding that already appears available to them.  Thus, any ruling in their cases "would be upon a hypothetical set of facts."  *Id*. at 1026 (internal quotation marks omitted).  It would redress no injury.  As for Perez specifically, the request to endorse her proportional allocation model is moot because she already convinced the Denver district court to adopt that model in her case.

Plaintiffs face another redressability problem.  Even if the Court were to agree that Perez's model was correct as a matter of federal law, this Court's ruling would not bind Colorado state courts.  "Although the Supremacy Clause demands that state law yield to federal law, neither federal supremacy nor any other principal [*sic*] of federal law

18

requires that a state court's interpretation of federal law give way to a federal court's interpretation other than that of the United States Supreme Court." *Cmty. Hosp. v. Fail*, 969 P.2d 667, 672 (Colo. 1998).

For these reasons, Plaintiffs lack standing to argue that the proportional allocation model is the proper way to resolve Medicaid's lien on any "unallocated settlement, judgment or award since April 15, 2012." (ECF No. 1 ¶ 60.) And because these Plaintiffs do not ask the Court to resolve their specific lien disputes, the Court likewise has no occasion to determine whether the proportional allocation model is appropriate in their respective cases. The Court therefore dismisses Plaintiffs' allegations with respect to the proportional allocation model, without prejudice to amendment if Plaintiffs can establish standing.

## C. Perez's Denial of Medicaid Reinstatement (Claim Four)

Plaintiffs' fourth claim for relief is Perez's claim only. Invoking 42 U.S.C. § 1983, Perez asserts that the Individual Defendants (Smith, Stricca, and Gardner) violated her federal Medicaid rights after she had been removed from the Medicaid rolls and was denied reinstatement. (ECF No. 1 ¶¶ 93–97.) Specifically, the Individual Defendants refused to recognize Perez's disability trust because she had not paid her Medicaid lien, and by so refusing, the assets in Perez's disability trust were counted against her and she was deemed to have too much money to qualify for Medicaid. (*Id*. ¶¶ 9–11, 93–97; *see also* ECF No. 21-2 at 2-4.) Perez claims that the Individual Defendants refused to recognize her trust solely in retaliation for her efforts to challenge her Medicaid lien. (ECF No. 1 ¶¶ 48, 93–97.)

19

The Individual Defendants seek to have this claim dismissed on numerous grounds.  The Court finds that Defendants' claim of qualified immunity is dispositive (*see* ECF No. 14 at 17–18), and therefore does not address Defendants' other arguments.

"When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions."  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (internal quotation marks omitted).  This Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Concerning the second part of the test, "[a] right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains."  *PJ*, 603 F.3d at 1196–97 (internal quotation marks omitted; alteration in original).

In response to this standard, Perez asserts that her rights were "clearly established under . . . *Wos* and *Ahlborn*.  These cases are clear authority throughout the United States . . . and [the Individual Defendants] should have been aware of the legal requirements under the cases."  (ECF No. 21 at 19.)  But Perez does not explain how the "legal requirements under the cases" clearly prohibit what happened here. Perez does not dispute that the Individual Defendants acted just as Colorado statutes

20

and regulations directed them to act with respect to her disability trust.  *See* Colo. Rev. Stat. § 15-14-412.8(4) (Department may not validate a disability trust that does not conform to its rules); 10 Colo. Code Regs. § 2505-10:8.100.7.E(6)(b)(i)(f) ("[a]ny [Medicaid lien] must be satisfied prior to funding of the trust and approval of the trust"). Thus, to the extent Perez claims that *Wos* and *Ahlborn* establish the invalidity of these statutes, her claim fails.  *Wos* and *Ahlborn* have nothing to do with how states administer disability trusts.

To the extent Perez means to say that *Wos* and *Ahlborn* categorically prohibit the Department from asking for the full amount of its lien in any circumstance similar to her own, the Court disagrees.  *Wos*, in particular, said that North Carolina's "irrebuttable, one-size-fits-all . . . presumption" that one-third of all recoveries are attributable to medical expenses "is incompatible with the Medicaid Act's clear mandate that a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to medical expenses."  133 S. Ct. at 1399.  *Wos* contrasted North Carolina's approach with statutes in Massachusetts and Oklahoma that establish a *rebuttable* presumption of *full* reimbursement.  *Id*. at 1401 (citing Mass. Gen. Laws, ch. 118E, § 22(c), and Okla. Stat., tit. 63, § 5051.1(D)(1)(d)).  "Without holding that these rules are necessarily compliant with the federal statute," the Supreme Court said, "it can be concluded that they are more accurate than the procedure North Carolina has enacted."  *Id*.

Thus, it is an open question whether a state violates federal law when the state seeks full reimbursement in all cases (as Colorado effectively does by virtue of its

statutes and regulations), especially when such a claim can be rebutted (which it can in Colorado, at least through a declaratory judgment action, or through opposing a Department action to enforce its lien, just as Perez did).  Given that this is an open question after *Wos* and *Ahlborn*, those cases do not clearly establish any federal right of which the Individual Defendants should have been aware.

In light of the foregoing, the Individual Defendants are entitled to qualified immunity and Plaintiffs' fourth claim for relief is dismissed with prejudice.

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Motion to Dismiss Class Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14) is GRANTED;

2.      Plaintiffs' first, second, and third claims for relief are DISMISSED WITHOUT PREJUDICE; if Plaintiffs wish to file an amended complaint, they must do so no later than April 24, 2015; and

3.      Plaintiffs' fourth claim for relief is DISMISSED WITH PREJUDICE.

Dated this 25th day of March, 2015.

BY THE COURT:

William J. Martinez
United States District Judge